**SOUTHERN BROKERAGE COMPANY,**
Appellant,

v.

**David CANNARSA, Appellee.**

**No. 7707.**

Court of Civil Appeals of Texas.

Texarkana.

June 14, 1966.

Rehearing Denied July 12, 1966.

R. Kelley Pierce, Dallas, for appellant.

H. Sam Davis, Jr., Burford, Ryburn & Ford, Dallas, for appellee.

CHADICK, Chief Justice.

This is a suit to recover damages for a breach of contract. Judgment entered at the conclusion of a jury trial awarded the appellee here, the plaintiff in the trial court, $7600.00 damages, attorney fees, interest, etc. The defendant below, appellant here, has perfected an appeal. The judgment of the trial court is affirmed.

David Cannarsa, a resident of Muskogee, Oklahoma, as plaintiff, instituted this suit in a District Court of Dallas County, against the defendant, Southern Brokerage Company, a corporation. Both parties are brokers and dealers in stocks and securities. Cannarsa deals principally in mutual funds, while Southern Brokerage Company's main business is in over-the-counter stocks. Both parties do some trading in securities registered (listed) on the New York and other national stock exchanges. Trading at the New York Stock Exchange is an exclusive privilege of membership. Members alone may execute orders on listed stock. Commissions for execution of orders are paid only to members. As a consequence, if a customer of Cannarsa or of Southern Brokerage Company desired to buy or sell a listed stock either broker would send the order to a member of the Exchange for execution and the Exchange member would receive the entire commission. To promote their securities business these two brokers separately and independently entered into an arrangement with Kamen & Company, a member of the New York Stock Exchange, to channel orders for listed stock to Kamen & Company. In turn, that brokerage house referred deals involving unlisted stock to each of the brokers as opportunity arose. In each instance the broker executing the order received full commission on the deal.

"During the year, 1963, certain employees of Kamen & Company, a member of the New York Stock Exchange, conceived and put into operation a scheme for 'rigging' or 'kiting' the stock of Jerome Richards & Co. Inc. by using unsuspecting independent brokers around the country to buy and sell said stock in accordance with specific instructions issued from Kamen & Company. On or about the 10th day of July, 1963, Plaintiff-Appellee, David Cannarsa, received instructions from Kamen & Company to buy 700 shares of Jerome Richards & Co.

Inc. stock, as principal, from Frederick Cirlin Associates of New York City at $18.875 per share, a total cost of $13,212.50; simultaneously, Cannarsa was instructed by Kamen & Company to sell 300 of such shares to Gerald Young & Company of Springfield, Massachusetts, and the remaining 400 shares to Southern Brokerage Company at a price of $19.00 per share for a total sales price of $13,300. Cannarsa was to receive no commission for the sales but was to retain the difference between his cost and the sales price, $87.50, for services rendered. The value of the stock to be sold to Appellant, by Cannarsa under instructions received from Kamen & Comany, was $7,600.

"On the same day, July 10, 1963, Defendant-Appellant received instructions from Kamen & Company to buy 400 shares of Jerome Richards & Co. Inc. Stock from Plaintiff-Appellee Cannarsa, at $19.00 per share, and to sell the same to Rybyl & Company Incorporated of Cheyenne, Wyoming, at $19.125 a share, retaining the difference between cost and sales price, $50.00, for services rendered.

"On July 10, 1963, Appellant, acting on Kamen & Company's instructions, sent to Appellee, Cannarsa a written confirmation of the purchase of 400 shares of Jerome Richards & Co. Inc. stock at $19.00 per share, the settlement date being stipulated therein as July 16, 1963. Cannarsa failed to confirm the sale until some time after the 10th of July when he sent Appellant a confirmation fixing the settlement date as of July 17, 1963.

"On July 22nd or 23rd, 1963, the parties hereto learned from Representatives of the Securities Exchange Commission that an investigation was being conducted as to transactions in Jerome Richards & Co. Inc. stock, to determine if the stock was being 'rigged'. With this knowledge Appellee, Cannarsa, on July 26, 1963 consummated his purchase of 400 shares of Jerome Richards & Co. Inc. stock,

from Frederick Cirlin Associates of New York City, pursuant to Kamen & Company's instructions of July 10, 1963.

"After Appellant learned from SEC representatives, that transactions in Jerome Richards & Co. Inc. stock were under investigation, it made inquiry concerning Rybyl & Company Incorporated of Cheyenne, Wyoming, to which it was to sell the stock to be delivered to Appellant by Appellee.

"On July 29, 1963, prior to any attempted delivery of stock to Appellant by Appellee, Appellant called Appellee, telling him that the deal was crooked and that he would not accept delivery of the stock contracted for, or honor a draft for the purchase price thereof. * * * Appellee drafted Appellant for $7,600 on at least three occasions, all of which drafts were refused by Appellant. Appellant by his investigation had discovered that his supposed buyer of the Jerome Richards & Co. Inc. stock, Rybyl Incorporated, of Cheyenne, Wyoming, did not exist, prior to his alerting the Appellee * * *.

"That, on August 5, 1963, with the knowledge of both parties hereto, the Securities Exchange Commission filed an action in the United States District Court, Southern District of New York, seeking an injunction against, among others, Kamen & Company, * * *.

"That to the knowledge of the parties hereto the United States District Court on September 11, 1963, issued an injunction * * *."

Excepting the author's conclusions about Kamen & Company "rigging" and "kiting" Jerome, Richard & Company stock, which has no support in the evidence, the foregoing slightly edited statement abstracted from appellant's brief expresses from the appellant's viewpoint the essential facts and is adopted as an accurate statement of the facts recited. Other facts will be stated when necessary. The central redout of the appellant's defense in the trial court and its

position here is that the uncontradicted evidence proves as a matter of law the transaction between Southern Brokerage Company and Cannarsa is an illegal contract made as a part of and in furtherance of a scheme by Kamen & Company to rig the price of Jerome, Richard & Co. stock in violation of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., and Rule 10b–5 of the Rules and Regulations of the Securities and Exchange Commission, 17 CFR § 240.10b–5, and as such is invalidated by subsection (b) of 15 U.S.C.A. § 78cc.

For appellant's contention to prevail the evidence must be such that reasonable minds can reach no other conclusion. 1 Tex.Law of Evidence (McCormick & Ray) p. 8 § 4. And conversely if a different conclusion might be reached by reasonable minds appellant's defensive position fails as the jury answered all submitted special issues favorably to the judgment rendered and the trial judge presumptively did the same on any submissible issue of fact that the parties allowed to be decided without submission to the jury.

The appellant's brief asserts that Kamen & Company's instructions of July 10, 1963, to Cannarsa to buy and sell 700 shares of Jerome, Richard & Company stock and Cannarsa's execution of the instructions constituted a "matched order" manipulation of security prices prohibited by the following provision of subsection (a) (1) of 15 U.S.C.A. § 78i, to-wit:

"78i. Manipulation of security prices

(a) It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—

(1) For the purpose of creating a false or misleading appearance of active trading in any security registered on a national securities exchange, or a false or misleading appearance with respect to the market for any such security, (A) to effect any transaction in such security which involves no change in the beneficial ownership thereof, or (B) to enter an order or orders for the purchase of such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale of any such security, has been or will be entered by or for the same or different parties, or (C) to enter any order or orders for the sale of any such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the purchase of such security, has been or will be entered by or for the same or different parties.

* * *."

And that the July 10 transaction in Jerome, Richard & Co. stock was a manipulative and deceptive device condemned by subsection (b) of 15 U.S.C.A. § 78j, and prohibited by Commission Rule 10b–5, both as follows, to-wit:

"78j. Manipulative and deceptive devices

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

"(a) * * *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

17 CFR § 240:10b–5.

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud.

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

▇ Securities registered or listed on a national securities exchange are the subject of 15 U.S.C.A. § 78i. See United States v. Morgan (DC NY 1953) 118 F. Supp. 621 at 695–696. The manipulations prohibited in this section are with respect to registered stock. The record presented to this court does not show Jerome, Richard & Co. stock to be registered or listed on a national exchange. The transaction of July 10, 1963, in the unlisted Jerome, Richard & Co. stock is not shown to be in violation of the provisions of 15 U.S.C.A. § 78i previously quoted.

▇ Both registered and unregistered securities are the subject of 15 U.S.C.A. § 78j. See United States v. Morgan (DC NY 1953) 118 F.Supp. 621 at 695–696. This section is applicable to the July 10, 1963, Jerome, Richard & Co. stock transaction previously described. The execution of "matched orders" prohibited by the provisions of 15 U.S.C.A. § 78i quoted above, if done for the purpose of creating a false and misleading appearance of active trading or a false and misleading appearance with respect to the market for Jerome, Richard & Co. stock or for any fraudulent purpose would constitute a manipulative and deceptive device prohibited by 15 U.S.C.A. § 78j and Commission Rule 10b–5. The evidence introduced has been examined carefully, and no proof can be found that the transaction in Jerome, Richard & Co. stock of July 10, 1963, directed by Kamen & Company and executed by Cannarsa was fraudulent or for the purpose of creating a false and misleading appearance of active trading in the stock or a false or misleading appearance with respect to the market for such securities; nor, as later to be discussed, was it a component of a larger scheme for that purpose.

▇ The only evidence in the record bearing upon the purposes of the brokers involved is that Kamen & Company referred the July 10, 1963, trade to Cannarsa pursuant to the business promotion plan mentioned earlier, and Cannarsa, in good faith, bought and sold the Jerome, Richard & Co. stock for his own account in order to make a quick profit. The buy-and-sell order placed with Cannarsa and executed by him has the appearance of a "matched order" prohibited by 15 U.S.C.A. § 78i, if given or executed for the purposes prohibited by the statute. The record contains no evidence of a purpose, motive or desire on the part of Kamen & Company or Cannarsa to accomplish the prohibited result. It is of some relevance to point out that "matched orders", that is, buy-and-sell orders of substantially the same size and at substantially the same time and price are not absolutely prohibited by the statute or Commission rule. See United States v. Morgan (DC NY 1953), 118 F.Supp. 621 at 696. The prohibition is against such action when its purpose is to create a false or misleading appearance of active trading or a false or misleading appearance with respect to the market for a security, or has a fraudulent effect in some other respect.

Beginning in January, 1963, and prior to the July 10, 1963, transaction, Kamen &

Company referred eight or nine buy-and-sell deals in Jerome, Richard & Co. stock to Southern Brokerage Company, which were in due course executed by the latter. Kamen & Company guaranteed payment to Southern Brokerage Company in each instance. A fewer number of buy-and-sell orders, in which he bought and sold for his own account, were referred by Kamen & Company to Cannarsa but no payment guaranty given. This activity indicates Kamen & Company had an active interest in the distribution of Jerome, Richard & Co. stock, but in the absence of evidence Kamen & Company intended and purposed to manipulate the market in a prohibited way, this proof of that brokerage house's enterprise, standing alone or in connection with any other facts developed in the record, does not lead to the single conclusion that Kamen & Company and the brokers it used singly or collectively engaged in a prohibited or fraudulent market activity. In this connection the following sentence from appellee's brief is emphasized, to-wit:

"There may have been rigging, but the record in this case does not disclose it."

There is evidence that both Cannarsa and Southern Brokerage Company were aware of a suit instituted against Kamen & Company by the Security and Exchange Commission in August, 1965, and that an injunction was thereafter granted prohibiting further trading in Jerome, Richard & Co. shares. Neither the record of Commission suit nor the decree entered was introduced in evidence. This court has nothing before it from which it may determine that this breach of contract action by Cannarsa is a proceeding in violation of an injunction that the witnesses mention in the course of their testimony. The contract between Cannarsa and Southern Brokerage Company antedated the filing of the injunction proceedings by several weeks.

The appellant's points of error and all argument and propositions set out under each of them have been studied carefully, as has the entire record. Nothing presented is found to require a reversal of the trial court's judgment; the points of error are therefore overruled and the judgment affirmed.